UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _10/15/2021_

---------------------------------------------------------------------X
                                     :

BLEND COTA and REDINA TILI,           :

                                :

                 Plaintiffs,        :

                                :           21-cv-1519 (LJL)

      -v-                          :

                                :         OPINION AND ORDER

ART BRAND STUDIOS, LLC,          :

                                :

                 Defendant.       :

                                :

---------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

       Defendant Art Brand Studios, LLC ("Defendant" or "Art Brand") moves for an order dismissing the action and compelling arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*, or, in the alternative, dismissing the complaint for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 12.

       For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

       On Defendant's motion to compel arbitration, the Court considers "all relevant, admissible evidence submitted by the parties and contained in the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, and draws all reasonable inferences in favor of the non-moving party."  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks and citation omitted).  On Defendant's motion to dismiss for failure to state a claim, the Court accepts as true the allegations of the complaint as well as the documents incorporated by reference.  *See Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 382-83 (S.D.N.Y. 2020).

A.     **The Parties and The Exclusive Publishing Agreements**

Plaintiffs Blend Cota ("Cota") and Redina Tili ("Tili," and collectively with Cota, "Plaintiffs" or the "Artists") are artists and citizens of the Dominion of Canada.  Dkt. No. 1 ¶¶ 2-3, 6-7.  Defendant Art Brand is a limited liability company incorporated under the laws of Delaware with its principal place of business in California.[1]  Dkt. No. 14-1, Attach. A at 1.  Art Brand sells and licenses artwork and markets and sells consumer products based on artwork created by studio artists or independent artists.  *Id.*

In 2017, the Artists entered into exclusive publishing agreements with Art Brand.  Cota entered into the agreement on February 10, 2017, Dkt. No. 15-1 (the "Cota Agreement"), and Tili entered into the agreement on July 1, 2017, Dkt. No. 15-2 (the "Tili Agreement," and collectively with the Cota Agreement, the "Agreements").[2]  The two Agreements are largely the same.  Each agreement is governed by California law and has a term of six years with an automatic one-year renewal unless the agreement is otherwise terminated.  Agreements ¶¶ 8(a), 12.

Under the Agreements, the Artists granted Art Brand the "exclusive rights to reproduce, adapt, manufacture, publish, market, distribute, sell and display all Products based on Artwork" produced by the Artists.  Cota Agreement ¶ 2; *see* Tili Agreement ¶ 2 (same but also including the exclusive rights to license).  Artwork was defined as "any and all original sketches, drawings, designs, design schemes, etchings, masks, paintings and any other works of visual art by Artist specifically created for the Company during the Term in accordance with Section 3(a)" of the

---

[1] The complaint alleges that Art Brand was formed under the laws of the state of California.  Dkt. No. 1 ¶ 8.

[2] The Agreements are incorporated by reference into the complaint.

agreements.[3]  Cota Agreement ¶ 1; *see* Tili Agreement ¶ 1 (same but also including concept originals).

Paragraph 3(a) of the Agreements required the Artists to produce a minimum of two images per month that were "consistent with Artist's style, suitable for publication and of acceptable quality to Company, as approved in the Company's reasonable discretion." Agreements ¶ 3(a).  During the term of the Agreements, the Artists were forbidden to "sell, reproduce, exhibit, or otherwise distribute any artwork of any kind in association with [the Artist's] own name [or to] authorize others to do any of the same."[4]  *Id.*  But "[a]ny original images not chosen by the Company may be sold by the Artist at [his or her] discretion."  *Id.*

The Artists agreed that Art Brand would own all intellectual property of artwork created under the Agreements.  *See id.* ¶ 3(c) ("Except as otherwise provided in this Agreement, the Company shall at all times be the sole owner of all copyrights and trademarks (including trade dress) associated with the Artwork produced and/or published under this Agreement.").  However, paragraph 3(d) of each agreement provided:  "The Artist shall own all original Artwork created under this Agreement.  For certainty, Artist shall retain all title to all original Artwork."  *Id.* ¶ 3(d).

The Artists agreed not to sell artwork in a "style confusingly similar" to artwork created under the Agreements:

> Artist understands that an essential term of this Agreement is that Artist will create Artwork with a unique and identifiable style, and Company would not enter this Agreement without the right to own that style of Artwork both during and following the term of this Agreement.  Further, during this Agreement, the Company will

---

[3] Products were defined as "any and all original artwork, open edition artwork, limited edition artwork, and other products associated directly or indirectly with the Artwork or the Artist." Agreements ¶ 1.

[4] There was an exception for Tili's pre-existing clients as of the date of her agreement.  Tili Agreement ¶ 3(a).

further develop artistic styles related to Artist.  As a result, Artist agrees that during this Agreement and following termination of this Agreement for any reason, Artist shall be prohibited from creating Artwork in a style confusingly similar to the style of the Artwork created under this Agreement, except upon the written consent of the Company, which may be withheld in Company's sole discretion.

*Id.* ¶ 8(d).

Although paragraph 3(c) of the Agreements gave Art Brand the copyright to the artwork, paragraph 3(f) provided that *the Artists* retained the copyright to any artwork rejected by Art Brand.  It also limited the ability of the Artists to authorize others to sell or distribute or use these "Rejected Images":

In the event any images provided to the Company under Section 3(a) above are not approved by the Company, in its reasonable discretion, Artist shall be free to sell the original artwork rejected by the Company (the "Rejected Images"). Notwithstanding the generality of Section 3(c) above, Artist shall retain the copyrights to such Rejected Images; however, Artist agrees that, for the life of any copyright of any such Rejected Image, Artist shall never grant any third party the right to print, vend, sell, reproduce, distribute and otherwise use, or permit or license others to print, vend, sell, reproduce, distribute and otherwise use the Rejected Images in any manner or by any means, whether or not now known, invented, used or contemplated.

*Id.* ¶ 3(f).

In exchange for the Artists' obligations under the Agreements, Art Brand was required to pay the Artists certain royalties based on sales and licenses by Art Brand of the artwork and to generate royalty reports on a quarterly basis.  *Id.* ¶ 5.

The Agreements could be terminated by mutual written consent of the parties; by Art Brand upon 90 days' prior written notice; by one party, upon the material breach of any agreement, covenant or representation or warranty of the other party, if such breach has not been cured 30 days after written notice of such breach; immediately by either party upon the bankruptcy or insolvency of the other party; and by the Artist upon 90 days written notice to Art

Brand if in each year following the initial six-year term certain minimum royalty amounts were not met.  *Id.* ¶ 8(a).

The Agreements also contained several non-solicitation provisions applicable both during the term of the Agreements and thereafter.

The parties agreed that during the term of the Agreements and for two years thereafter, the parties would not:

> [I]nfluence or attempt to influence the other party's customers or suppliers or any of its present or future subsidiaries or affiliates, either directly or indirectly, to divert their business to any individual, partnership, firm, corporation or other entity then in competition with any business of the other party, or any subsidiary or affiliate of the other party.

*Id.* ¶ 16.

The parties agreed that, during the term of the Agreements and for two years thereafter, the parties would not solicit each other's employees.  Specifically, the parties would not:

> [D]irectly or indirectly solicit any of the employees of the other party, its subsidiaries or its affiliates to work for or invest in, as the case may be, any business, individual, partnership, firm, corporation, or other entity then in competition with the business of the other party or any subsidiary or affiliate of the other party.

*Id.* ¶ 17.

The parties mutually agreed that, during the term of the Agreements and for two years thereafter, the parties would not:

> [M]ake contact with, attempt to deal with or enter into any contract or Representative Relationship with any Contact Source introduced to [one party] by agents, employees or principals of [the other party], without the prior written consent of the [the other party], which may be withheld in the [other party]'s reasonable discretion.

*Id.* ¶ 18.

Finally, the Artists agreed that, upon termination of the Agreements, they would be prohibited from:

(i) utilizing any unique marketing program similar to those programs of the Company, (ii) utilizing any unique manufacturing techniques of the Company, (iii) entering into any licensing relationship with any licensees under a license agreement with the Company; and (iv) selling or marketing to any customers or distribution channels identified or sold to during the term of this Agreement, except those Artist has sold to prior to this Agreement.

Cota Agreement ¶ 8(e); *see* Tili Agreement ¶ 8(e) (same).

The Agreements also contained the following mediation and arbitration provision:

Prior to the initiation of any formal dispute resolution procedures, the parties will first attempt to resolve their dispute informally by discussing the problem and negotiating in good faith in an effort to resolve the dispute without the necessity of any formal proceeding. If the Parties are unable to reach agreement, each agrees to submit the dispute to non-binding mediation by a mutually agreed mediator prior to taking any formal legal action. If mediation is unsuccessful, any controversy or claim arising out of or relating to this Agreement shall be settled exclusively by arbitration, conducted before a panel of three (3) arbitrators the State of New York, City of New York, with the Artist and Company each selecting one (1) arbitrator and those two arbitrators selecting the third arbitrator. Such arbitration shall be conducted in accordance with the rules of the American Arbitration Association then in effect. Judgment may be entered on the arbitrators award in any court having jurisdiction. The prevailing party, as determined by the arbitrators, shall be entitled to recover reasonable attorneys' fees in the discretion of the arbitrators.

Agreements ¶ 15.

## B.    The Origins of the Dispute

Beginning around mid-2018, shortly after the Agreements were executed, the Artists complained that Art Brand was not sufficiently marketing and selling their artwork. Dkt. No. 14-1, Attach. A at 5. According to the Artists, Art Brand also did not provide the Artists with quarterly reports on royalties. Dkt. No. 1 ¶ 19; Dkt. No. 19 ("Cota Decl.") ¶ 8. The Artists declare that they have been unable to earn a living as artists due to Art Brand's conduct. Cota Decl. ¶ 11; Dkt. No. 20 ("Tili Decl.") ¶ 13. Cota declares that Art Brand underpaid royalties owed to him. Cota Decl. ¶ 9. Tili declares that Art Brand "has not sold a single piece of [her] artwork nor generated a $1 in royalties since [she] signed [her] publishing agreement in 2017," Tili Decl. ¶ 11, and that she has "not received so much as a dollar in royalties from Art Brand in

four years," *id.* ¶ 12.  Tili declares that Art Brand never prepared an art schedule or marketing plan for her artwork.  *Id.* ¶ 8.

Art Brand in turn complained that the Artists breached their Agreements by violating their minimum production obligations to Art Brand.  Dkt. No. 14-1, Attach. A at 5.  Art Brand also complained of other violations of the Agreements by the Artists, including "[f]ailing to produce acceptable works," "[d]irectly selling and marketing prints and originals without the knowledge or consent of Art Brand," "[c]reating unauthorized websites through which to sell their unauthorized works," "[m]isappropriating copyrighted images," and "[c]reating infringing derivative works and infringing upon copyrighted images."  *Id.* at 5-6.

In the spring of 2019, the Artists attempted to negotiate a change to their Agreements with Art Brand, but Art Brand would not commit to the changes in writing.  Cota Decl. ¶ 12; Tili Decl. ¶ 14.  In August 2019, the Artists met with a representative of Art Brand and worked out an agreement to resolve their disputes, but Art Brand refused to honor the agreement.  Cota Decl. ¶¶ 13-14; Tili Decl. ¶¶ 15-16; Dkt. No. 14-2, Attach. A at 2.  The parties continued to negotiate into December 2019 and attempted to mediate the dispute.  Cota Decl. ¶ 15; Tili Decl. ¶ 17; Dkt. No. 14-2, Attach. A at 2.

### C.    The Arbitration

On December 13, 2019, Art Brand filed a demand for arbitration with the American Arbitration Association ("AAA").  Dkt. No. 14-1. In the demand, Art Brand alleged that the Artists breached their Agreements with Art Brand and engaged in tortious activity.  Specifically, Art Brand claimed that the Artists' "violations and breaches include[d] . . . failing to produce the minimum quantity of works on the agreed-upon schedule; intentionally failing to produce acceptable works offered to Art Brand; directly selling and marketing prints and originals without the knowledge or consent of Art Brand; creating unauthorized websites to sell their

unauthorized works . . . ; misappropriating copyrighted images from third parties licensed to Art Brand for Art Brand's use and development; creating infringing derivative works; and infringing upon copyrighted images owned by Art Brand . . . ." *Id.*, Attach. A at 1.  Art Brand asserted causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, copyright infringement, trademark infringement and false designation of origin, and conversion.  *Id.* at 6-7.

On January 31, 2020, the Artists filed an answer and counterclaim.  Dkt. No. 14-2.  The Artists denied each and every claim of Art Brand.  *Id.*, Attach. A at 1.  The Artists claimed that Art Brand breached their Agreements with the Artists and that, as a result, the Agreements had been effectively terminated.  *Id.* at 1-2.  The Artists asserted forty-seven affirmative defenses.  The Artists did not dispute the enforceability of the arbitration provision—aside from a boilerplate objection that "Claimant's claims are barred in whole, or in part, due to jurisdiction and venue being improper."  *Id.* at 13 (forty-sixth affirmative defense).  The Artists also asserted the affirmative defense that "any agreement(s) alleged to have been breached is/are invalid/illegal."  *Id.* at 9 (twenty-eighth affirmative defense).  The Artists then asserted twenty-two counterclaims.  *Id.* at 15-27.  The Artists' sixth counterclaim for "Contracts Against Public Policy" alleged that the non-solicitation provisions in the Agreements restrained the Artists from engaging in their professions and were void as against public policy.  *Id.* at 19.  The ninth counterclaim sought declaratory relief that the non-compete, non-competition, non-solicitation, and confidentiality provisions were void as against public policy.  *Id.* at 20.  Among the relief sought by the Artists was that "[t]he non-compete/non-competition clauses be held as unenforceable under the statutes cited herein"; [t]he non-solicitation clauses be held as

unenforceable and against public policy"; and "[t]he Confidentiality Clauses be held as unenforceable and against public policy." *Id.* at 28.

After the Artists' answer and counterclaims were filed, Art Brand paid $20,025.00 to the AAA for administrative and arbitrator fees. Dkt. No. 14 ("Marian Decl.") ¶ 4. On or about February 27, 2020, the AAA billed the Artists $2,750 for half of the arbitrator compensation deposit, which the Artists paid. Dkt. No. 21 ("Constantino Decl.") ¶¶ 6, 7; Dkt. No. 21-1. On or around March 6, 2020, the AAA billed the Artists an additional $8,625 for their counterclaims, which they also paid. Constantino Decl. ¶¶ 8, 9.

On or around June 15, 2020, Art Brand decided to pursue a different strategy; it insisted that the arbitration proceed before a three-arbitrator panel. *Id.* ¶ 10. The AAA billed the Artists $5,750 for their share of the deposit for the two added arbitrators, which the Artists also paid. *Id.* ¶¶ 11, 12. The AAA billed the Artists an additional $7,500 for their share of the arbitrators' study time on the motions; the Artists also paid this sum. *Id.* ¶¶ 14-15. On or around August 13, 2020, the AAA billed the Artists $220,500 for their share of the arbitrators' compensation, and on or around October 30, 2020, the AAA billed the Artists $10,350.000 for the final fee. *Id.* ¶¶ 16, 18; Dkt. No. 21-1. The Artists did not pay either of these fees.

On October 16, 2020, counsel for the Artists wrote a letter to Art Brand's counsel to advise that the Agreements had terminated under their force majeure clauses effective March 23, 2020 and to respond to an email that Art Brand's counsel sent days earlier, on October 13, 2020, alleging that the Artists had waived their right to arbitration. Dkt. No. 21-8 at 1. Art Brand's email asserted that the Artists' failure to pay arbitration fees constituted a breach and waiver of arbitration. *Id.* at 3. The Artists' letter in response to that argument noted that the Agreements contained no provision regarding the payment of fees and that Rule R-57 of the Commercial

Arbitration Rules governed the issue and did not state that the failure to pay costs constitutes a breach of an agreement to arbitrate.  *Id.* at 3-4.  The letter also noted:  "The case manager explained that any overage of arbitration fees paid by Art Brand can be remedied through the final award; assuming Art Brand is actually capable of proving its claims.  Art Brand has agreed that the AAA rules govern this proceeding, so it must abide by the determination of the panel as to the payment of outstanding fees."  *Id.* at 4 (citing *Dealer Computer Servs. v. Old Colony Motors, Inc.*, 588 F.3d 884 (5th Cir. 2009), and *Lifescan, Inc. v. Premier Diabetic Servs.*, 363 F.3d 1010 (9th Cir. 2004)).

On November 9, 2020, the Artists sent the arbitration panel ("Panel") a letter requesting permission to prosecute their counterclaims despite their inability to pay the fees of the arbitration in advance.  Dkt. No. 21-4.  The letter expressed counsel's understanding that the tribunal had directed Art Brand to advance the full costs of the arbitration with the understanding that, if Art Brand prevailed, the final award would include reimbursement to Art Brand for the Artists' portion of the arbitration fees and that, under Rule R-57(b) of the AAA Commercial Rules, Art Brand could request that the tribunal preclude the Artists from prosecuting their counterclaims.[5]  *Id.* at 1.  The letter asked the tribunal to reject Art Brand's request.  *Id.*  It

---

[5] Rule R-57 on "Remedies for Nonpayment" states:  "If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment."  Dkt. No. 18-1 at 30.  The rule also gives each party a right to request relief with respect to the other's failure to pay.  Under R-57(a), "a party may request that the arbitrator take specific measures relating to a party's non-payment."  *Id.*  R-57(b) provides:  "Such measures may include, but are not limited to, limiting a party's ability to assert or pursuant their claim.  In no event, however, shall a party be precluded from defending a claim or counterclaim."  *Id.*

R-57(e) also gives the arbitrator or the AAA the power first to "order the suspension of the arbitration" upon receipt of information from the AAA that full payments have not been received.  *Id.* at 31.  And "[i]f the arbitration has been suspended by either the AAA or the arbitrator and the parties have failed to make the full deposits requested within the time provided

asserted that the Artists were currently enduring financial hardship as a result of emergency orders issued by the government of Ontario in connection with the COVID-19 pandemic and that the non-compete clauses of the Agreements prevented them from generating income to pay the fees.  *Id.*  It also noted that the Artists' counterclaims were inextricably intertwined with Art Brand's claims.  *Id.*  The letter attached a copy of the Artists' counsel's October 16, 2020 letter responding to the request from Art Brand that the parties agree that the Artists had waived their right to arbitration and that both parties proceed to litigation.

A few days later, on November 13, 2020, Art Brand wrote the Panel in connection with that day's deadline for the production of documents.  Dkt. No. 21-5.  It noted the position of the Artists in their November 9, 2020 letter—including the expectation that Art Brand would pay the entirety of the AAA fees and seek recourse after (and if) Art Brand won—and stated that Art Brand would "await direction and decision from the Panel as to how to proceed in this case and will hold off on production until we receive further direction from the Panel." *Id.*  The same day, the Artists responded that they were "financially incapable of paying th[e] Tribunal's fees due to Art Brand's breaches and the current pandemic" and stated that, in light of Art Brand's decision not to produce documents, they would "withhold their document production until they receive word from th[e] Tribunal as to how this matter will proceed."  Dkt. No. 21-6.

On November 18, 2020, Art Brand responded to the Artists' November 9, 2020 letter. Dkt. No. 14-4.  It asserted that it would not "'front' the Artists' portion of AAA dues" and,

---

after the suspension, the arbitrator, or the AAA if an arbitrator has not been appointed, may terminate the proceedings."  *Id.* (Rule 57(f)).

Relatedly, Rule R-53 on "Administrative Fees" provides:  "The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award.  The AAA may, in the event of extreme hardship of any party, defer or reduce the administrative fees."  *Id.* at 29.

invoking Rule R-57(b), asked the Panel to dismiss the Artists' counterclaims.  *Id.* at 1.  It stated: "In short, Art Brand will pay for its own portion of the matter.  If the Artists refuse to fund their half of the requested fees and costs, the Panel should suspend any portion of the Arbitration that relates to the Artists."  *Id.*  It concluded:  "There is no basis to force Art Brand to pay the entirety of the fees in this Arbitration *or* to pay for the Artists' *twenty-two* meritless counterclaims, particularly where the Artists are apparently judgment proof."  *Id.* at 4.

On November 23, 2020, the Panel issued Case Management Order No. 3.  Dkt. No. 21-7. Referring to Art Brand as "Claimant" and the Artists as "Respondents," the order stated:

> The Panel is in receipt of various letter applications from the parties.  The Panel has also been informed that the parties are *each* in arrears with respect to the amounts invoiced by the ICDR, and further that Respondents have represented that they are unable to remit the outstanding amount at this time, and *that Claimant is unwilling to advance Respondents' outstanding amount*.
>
> By Order of the Panel, the following is now in effect:
>
> 1. Administration of this matter is suspended immediately.  If the parties have not provided proof, to the ICDR's satisfaction, that full payment of the total outstanding amount has been made by Monday, February 22, 2021 @ 6:00 pm ET, this proceeding shall thereafter be terminated.  *See* Rule R-57(f).
>
> 2. Claimant may make payment on behalf of Respondents to avoid continued interruption of this proceeding.  If Claimant does so, it may then make repayment of the amount paid a part of its claim.  If Respondents do not make payment and Claimant is willing to cover the outstanding amount, it shall confirm this commitment in writing to the ICDR Case Manager and make payment to the ICDR.
>
> 3. All previously ordered case management dates are hereby VACATED.  The Panel also takes all pending applications under advisement at this time.

*Id.* (emphasis added).

Rule R-57(f) provides:  "If the arbitration has been suspended by either the AAA or the arbitrator and the parties have failed to make the full deposits requested within the time provided after the suspension, the arbitrator, or the AAA is an arbitrator has not been appointed, may terminate the proceedings."  Dkt. No. 18-1 at 31.

On January 19, 2020, Art Brand wrote to the Panel:

> [O]ur client intends to—and will—make its payment in full once it has confirmation that the opposing side intends to submits its fee.  We are prepared to do so immediately at such time.  As it stands, we are under the express understanding that the other side does not intend to pay anything, and have affirmatively asked that our client pay their portion.  We, of course, do not intend to pay the other side's portion of fees and costs.

Dkt. No. 14-5; *see* Mariam Decl. ¶ 7.

On February 24, 2021, two days after the deadline set in Case Management Order No. 3, the Panel terminated the arbitration.  Dkt. No. 14-6.  Its order reads as follows:  "The ICDR having not received full payment of the total outstanding amount by this past Monday, February 22, 2021 @ 6:00 pm ET, pursuant to Paragraph 1 of Case Management Order No. 3, this proceeding is now hereby TERMINATED."  *Id.*

## PROCEDURAL HISTORY

On February 19, 2021, a few days before the arbitration was terminated, the Artists filed their complaint against Art Brand in this Court.  Dkt. No. 1.  They allege that Defendant failed to pay them royalties and failed to generate royalty reports while simultaneously limiting their ability to sell their artwork elsewhere and to earn a living.  *Id.* ¶¶ 19-24.  Plaintiffs seek a declaratory judgment that any restraint in the Agreements on Plaintiffs' ability to create, sell or distribute their artwork or to enter into agreements with third parties to sell and distribute the Plaintiffs' artwork are void and unenforceable under Section 16600 of the California Business and Professions Code.  *Id.* ¶ 28.  That statute provides:  "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Cal. Bus. & Prof. Code § 16600.

On April 28, 2021, Defendant filed a motion to compel arbitration and in the alternative to dismiss the complaint, Dkt. No. 12, along with a brief in support of the motion, Dkt. No. 13.

Defendant argues that the binding arbitration provisions in the Agreements are valid and that the dispute comes within the scope of those arbitration agreements.  Dkt. No. 13 at 12-13. Accordingly, Defendant argues that the Court is required to dismiss the action and compel arbitration.  *Id.* at 13.  Additionally, Defendant contends that the Artists fail to state a claim upon which relief can be granted because the non-solicitation and intellectual property provisions are valid under California law.  *Id.* at 13-18.  Plaintiffs filed an opposition brief on May 19, 2021. Dkt. No. 17.  Defendant filed its reply brief on June 2, 2021.  Dkt. No. 22.[6]

## DISCUSSION

The Court first addresses Defendant's motion compel arbitration and then turns to Defendant's motion to dismiss for failure to state a claim.

## I.      Motion to Compel Arbitration

Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, requires courts to stay litigation proceedings that are referable to arbitration.  Before doing so, however, a court must determine: "(1) whether there is a valid agreement to arbitrate; (2) whether a court or an arbitrator should decide if the dispute falls within the scope of the agreement to arbitrate; and (3) whether the dispute does fall within the scope—the question of arbitrability."  *PB Life & Annuity Co. v. Universal Life Ins. Co.*, 2020 WL 2476170, at *5 (S.D.N.Y. May 12, 2020) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-50 (1986)); *see also Convergen Energy LLC v. Brooks*, 2020 WL 5549039, at *13 (S.D.N.Y. Sept. 16, 2020).

---

[6] On August 13, 2021, the Court ordered the parties to show cause for why the case should not be dismissed for failure to properly allege diversity jurisdiction.  Dkt. No. 31.  The order provided, "[i]f the members of the LLC are all citizens of the United States and thus diversity exists, the parties may so state pursuant to letter which the Court will deem to amend the jurisdictional allegations of the complaint absent objection."  *Id.*  On August 23, 2021, Plaintiffs responded that "on information and belief, all members of Defendant Art Brand Studios are members of the United States."  Dkt. No. 33.  Defendant did not file an objection.

Unlike the "enforceability or applicability" of an arbitration agreement, which may be delegated to an arbitrator, questions regarding the "formation of the parties' arbitration agreement" must be decided by a court. *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010)); *see also id.* ("Arguments that an agreement to arbitrate was never formed . . . are to be heard by the court even where a delegation clause exists." (quoting *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018)); *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order) (moving party need not "show initially that the agreement would be *enforceable*, merely that one existed"). That is because "[a]n agreement that has not been properly formed is not merely an unenforceable contract; it is not a contract at all." *Doctor's Assocs.*, 934 F.3d at 251. "And if it is not a contract, it cannot serve as the basis for compelling arbitration." *Id.; see also* 9 U.S.C. § 2 ("A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). Additionally, "[w]hether the parties agreed to arbitrate is determined by state contract law." *Kurz v. Chase Manhattan Bank USA, N.A.*, 319 F. Supp. 2d 457, 461 (S.D.N.Y. 2004) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Convergen*, 2020 WL 5549039, at *13.

When deciding a motion to compel arbitration under the FAA, the court adopts a "standard similar to that applicable for a motion for summary judgment," *Meyer*, 868 F.3d at 74 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)); *see also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability . . . ."). This standard

requires courts to "consider[] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Meyer*, 868 F.3d at 74 (internal quotations omitted) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)).

Plaintiffs do not dispute that they are parties to a binding arbitration agreement and that such agreement ordinarily would cover their dispute.  The Agreements contain identical arbitration clauses; each provides that "any controversy or claim arising out of or relating to this Agreement shall be settled exclusively by arbitration."  Agreements ¶ 15.  Plaintiffs' dispute over the Agreements' provisions and their request that the Court declare them unenforceable fall within the scope of the arbitration provision as they "aris[e] out of [and] relat[e] to th[e] Agreement."  *Id.*

Plaintiffs instead argue that Defendant cannot relying on Section 3 of the FAA because (1) Defendant failed to pay the arbitration fees and was in default in the arbitration, and (2) the arbitration Defendant seeks to compel already "has been had."

Section 3 of the FAA provides in full:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration *has been had* in accordance with the terms of the agreement, *providing the applicant for the stay is not in default in proceeding with such arbitration*.

9 U.S.C.A. § 3 (emphasis added).

For their first argument, Plaintiffs rely on the last clause of Section 3, which contains the condition precedent for a stay of an action in favor of arbitration.  "[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the

agreement, *providing the applicant for the stay is not in default in proceeding with such arbitration*."  9 U.S.C. § 3 (emphasis added).

At least three circuits that have considered the issue have concluded that an applicant can "default in proceeding with such arbitration" by not paying arbitration fees.  *See Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 932 (11th Cir. 2019) (finding that a party can default by waiving the right to arbitrate and that party "waived its right to arbitration by failing to pay arbitration fees"); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015) ("Failure to pay arbitration fees constitutes a 'default' under § 3."); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1199-1200 (9th Cir. 2003) (affirming district court conclusion that party defaulted in arbitration for not paying fees); *see also Steffanie A. v. Gold Club Tampa, Inc.*, 2020 WL 4201948, at *3-4 (M.D. Fla. July 22, 2020) (finding party's refusal to pay arbitration fee constitutes a waiver of the right to arbitrate).  "One way that an applicant can 'default in proceeding with such arbitration' is by waiving the right to arbitrate." *Freeman*, 771 F. App'x at 932.  And as articulated by the Eleventh Circuit in *Freeman*, "[t]o determine whether a party has waived its contractual right to arbitrate, courts apply a two part test: 'First, [they] decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and, second, [they] look to see whether, by doing so, that party has in some way prejudiced the other party.'" *Id.* (quoting *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1316 (11th Cir. 2002)).

The record before the Court demonstrates that Defendant acted inconsistently with its arbitration right.  Art Brand's initial actions were consistent with an intent to prosecute its arbitration claim.  It filed the demand for arbitration, initially paid the fees that were due from it, and, even after the Artists expressed their inability to pay, still stated that it was willing to pay its

share of the arbitral fees and asked the arbitral panel to proceed to adjudicate its claims and to

dismiss the Artists' counterclaims.  However, the Panel rejected Art Brand's request and

declined to continue the arbitration in that manner.  Instead, it issued an order that it would

terminate the entire arbitration—both the claims and the counterclaims—if full payment was not

made.  The order also gave Art Brand the right to pay the fees for both parties (subject to

recoupment from the Artists if Art Brand prevailed) if Art Brand wanted to continue the

arbitration, including both its claims and the counterclaims.  Thereafter, Art Brand had a

choice—it could pay both fees if it wanted to prosecute the claims and take the risk that it might

never be able to recover the share of fees owed by the Artists or it could elect not to pay either

set of fees and allow the arbitration (including its claims) to terminate.  It elected the latter,

knowing that doing so would eliminate its ability to arbitrate.  Having chosen not to pay the

arbitral fees and having taken action that it knew would result in the termination of the

arbitration, Defendant acted inconsistently with its arbitration right.  *See, e.g.*, *Steffanie A.*, 2020

WL 4201948, at *4.

Art Brand asserts that "the Panel terminated the arbitration because the Artists refused to

submit payment."  Dkt. No. 13 at 8.  That statement is only partially true.  It is true that the

Artists refused to submit payment.  But that refusal was not the reason the Panel gave for

terminating the arbitration.  In Case Management Order No. 3, it noted that each party was "in

arrears with respect to the amounts invoiced by the ICDR" and both that the Artists were

"unable" to remit the outstanding amount at the time and that Art Brand was "unwilling" to

advance the outstanding amount. Dkt. No. 21-7.  It then warned Art Brand that if "full payment"

was not made, the arbitration would be terminated under Rule R-57(f).  Only when Art Brand

refused to do so, did the Panel terminate the proceeding.  In short, the Panel terminated the proceeding because, the Artists being unable to pay, Art Brand was unwilling to pay.

There is no force to Art Brand's argument that the Panel "never directed or ordered [it] to advance the full costs of the arbitration."  Dkt. No. 22 at 3.  It is irrelevant that the Panel did not *direct* Art Brand to advance the full costs of the arbitration.  It also did not direct the Artists to advance their share of the costs.  The key factor in determining whether a party is in "default" is not whether the party disregards an affirmative order of the Panel but instead whether the party fails to take that action available to it to keep the arbitration alive and thus acts inconsistently with the right to arbitrate, causing prejudice to the other side.  *See Freeman*, 771 F. App'x at 932.  In short, a party can just as easily default by failing to make a payment it has the option to make to keep an arbitration alive as it can by failing to make a payment it is ordered to make.

There also is no force to its argument that "[a]n order compelling this case to arbitration would allow Art Brand, under the AAA Commercial Rules, to request [that] the Panel prevent the Artists from pursuing their twenty-two counterclaims."  *Id.* at 5.  That is the precise request that Art Brand previously made to the Panel and that the Panel rejected.  It rejected any argument that the Artists alone were responsible to make their share of the payment to keep the arbitration alive, putting the onus on Art Brand to pay if the Artists did not.  "It is true that AAA might have handled the case differently."  *Steffanie A.*, 2020 WL 4201948, at *4.  The Panel could have acceded to Art Brand's request to dismiss the counterclaims and permit the arbitration to go forward on the claims alone.  It could have put the onus on the Artists alone.  But the Panel did not do so.  A court order now would compel the Panel to do, or reconsider doing, what it expressly declined to do—exactly opposite to the respect for the arbitral process and for the right

of the arbitrators (and not the court) to decide on arbitration rules and provisions that the FAA is designed to reflect.

The cases cited by the parties are inconsistent with Art Brand's argument that it could only have defaulted if it failed to make a payment it was directed to make.  In *Freeman*, for example, the arbitration organization JAMS made "multiple requests for full payment" of the filing fee from the defendant SmartPay and indicated that if the fee was not paid it would not administer the arbitration.  771 F. App'x at 930.  SmartPay, the party later seeking to compel arbitration, declined to pay what JAMS requested, arguing that it was contrary to its contractual agreement with the plaintiff consumer.  *Id.* at 929.  Its claim was similar to that which Art Brand makes here:  It should not be required to pay fees that the other side was obligated to pay as a condition of continuing the arbitration.  JAMS rejected SmartPay's argument, deciding that the consumer was not required to pay the fees it had contractually agreed to pay but only the fees due under the JAMS's Consumer Minimum Standards.  *Id.* at 928-29.  After SmartPay responded that it would not pay the fees contractually due from the consumer, JAMS dismissed the arbitration.  *Id.* at 929-30.  The Eleventh Circuit held that SmartPay had acted inconsistently with its contractual right to arbitrate when it refused to pay the amount that JAMS determined should be paid in order to continue the arbitration and that it therefore waived its right to arbitration.  *Id.* at 933.  There was no order in *Freeman*, just a request.  The failure to honor the request when honoring it was necessary to keep the arbitration alive was sufficient to constitute a "default."

So too here.  In the face of the Artists' representation that they were unable to pay, the Panel stated that if Art Brand continued to be unwilling to pay, the arbitration would be dismissed.  Art Brand made that choice, knowing the result would be the end of its claims in

arbitration.  It is irrelevant whether the Artists were bound by contract or by the AAA's initial

rules to pay the half-share of the three-member panel.  Art Brand did not have the right to

determine the terms under which it would pay to continue the arbitration.  When the Panel later

decided it would continue the arbitration only if Art Brand fronted the costs for the fees that

otherwise would be owed by the Artists, Art Brand declined to do so.  In doing so, Art Brand,

like SmartPay, acted inconsistently with its contractual right to arbitrate.

Art Brand does not dispute that the Artists have satisfied the "prejudice" prong of the

default inquiry.  In order to demonstrate prejudice, the party opposing arbitration need not show

that he or she has lost the ability to adjudicate a winning claim; it is sufficient that the opposing

party show that, as a result of the other side's action, it has lost its opportunity to have the claim

adjudicated in the forum selected by the parties.  *See Freeman*, 771 F. App'x at 933 (finding

prejudice where party "prematurely terminated the arbitration and effectively precluded [the

other party] from seeking relief through the arbitration proceeding").  That showing has been

made here.  Art Brand's demand itself sought relief for the Artists' alleged breaches of contract.

Dkt. No. 14-1, Attach. A at 1.  In response, the Artists asserted the affirmative defense that "any

agreement(s) alleged to have been breached is/are invalid/illegal."  Dkt. No. 14-2, Attach. A at 9.

The Artists' counterclaims also alleged that the contracts Art Brand were seeking to enforce were

void as against public policy for violating Section 16600 of the California Business and

Professions Code.  *Id.* at 19.  Had Art Brand taken the actions required by the Panel to continue

the arbitration, those claims would have been adjudicated.  Either Art Brand would have been

vindicated in its claim that the provisions were enforceable and had been breached or the Artists

would have been vindicated that the Agreements were illegal and unenforceable.  As it stands

now, however, in the face of the decision by Art Brand not to keep the arbitration going, the

Artists are left forever in limbo, uncertain whether the clauses are enforceable and denied the adjudication on the relief they were seeking.

Having acted inconsistently with the arbitration right and prejudiced the Artists, Art Brand waived its contractual right to arbitrate and is in default in the arbitration.

In the alternative, no stay may be granted in this case because the arbitration already "has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  Courts have held that an "arbitration has been had" within the meaning of Section 3 of the FAA when an arbitral panel has terminated the proceeding for failure to pay without conducting further proceedings or granting an award.  *See Freeman*, 771 F. App'x at 935; *Pre-Paid Legal Servs.*, 786 F.3d at 1294; *see also Tillman v. Tillman*, 825 F.3d 1069, 1074 (9th Cir. 2016); *Bruzda v. Sonic Auto.*, 2017 WL 5178967, at *3 (D. Colo. Jan. 23, 2017); *Noble Cap. Fund Mgmt., LLC v. US Cap. Glob. Inv. Mgmt., LLC*, 2021 WL 1940619, at *6 (W.D. Tex. May 14, 2021), *report and recommendation adopted sub nom. Noble Cap. Fund Mgmt. LLC v. U.S. Cap. Glob. Inv. Mgmt., LLC*, 2021 WL 2773015 (W.D. Tex. June 8, 2021).  These rulings are a logical corollary to the proposition that the "district court can[not] force an independent arbitration organization such as the AAA to ignore its own rules and re-open a case that it has previously closed."  *Steffanie A.*, 2020 WL 4201948, at *4.  To grant a stay in these circumstances would be to place the parties in a perpetual state of uncertainty—unable to proceed with the arbitration pursuant to that tribunal's rules but also unable to proceed with a litigation because the arbitration has not reached its conclusion.  *See Sink*, 352 F.3d at 1201.  That result would be precisely contrary to "[a] prime objective of an agreement to arbitrate," which is "to achieve 'streamlined proceedings and expeditious results.'"  *Preston v. Ferrer*, 552 U.S. 346, 357 (2008) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 633 (1985)); *see also Conticommodity*

*Servs. Inc. v. Philipp & Lion*, 613 F.2d 1222, 1224 (2d Cir. 1980) ("Arbitration is intended to provide the parties to a dispute with a speedy and relatively inexpensive trial before specialists."); *Sink*, 352 F.3d at 1201 ("One purpose of the FAA's liberal approach to arbitration is the efficient and expeditious resolution of claims.").

The arbitration here "has been had" in accordance with the terms of the parties' Agreements.  Those Agreements required the parties to submit their dispute to arbitration before the AAA "in accordance with the rules of the American Arbitration Association then in effect." Agreements ¶ 15.  It did not specify who was to pay the fees.  Rule R-57 of the AAA then in effect provided that if the fees "have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment."  Dkt. No. 18-1 at 30.  The Panel's Case Management Order No. 3 informed Art Brand that Art Brand could make payment on behalf of the Artists to avoid interruption in the proceeding.  Dkt. No. 21-7.  Art Brand did not make the required payment, and the arbitration was terminated.  Accordingly, at this stage, the arbitration has been had.

For the foregoing reasons, the Court denies Defendant's motion compel arbitration.

## II.     Motion to Dismiss for Failure to State a Claim for Relief

The Court proceeds to address Art Brand's motion to dismiss the complaint for failure to state a claim for relief.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual

enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate

question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Id.* at 679.  Put another way, the plausibility

requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v.*

*Siracusano*, 563 U.S. 27, 46 (2011).

The complaint alleges generally that "any restraint in the Publishing Agreements on the

Artists' ability to create, sell, or distribute—or otherwise enter into agreements with other parties

to sell and distribute—artwork are [sic] void and unenforceable."  Dkt. No. 1 ¶ 28.  It seeks a

declaration that any "restraints on the Artists' ability to engage in their lawful profession, trade,

or business are void under Section 16600 of the California Business and Professional Code."  *Id.*

¶ 29.  The complaint, however, highlights only a few specific provisions of the Agreements.  *Id.*

¶¶ 14, 17.  Specifically, the complaint cites only paragraphs 8(d), 8(e), 16, and 18 of the

Agreements.  *Id.*

Though the complaint includes allegations regarding royalties and the failure to generate

royalty reports and cites to paragraphs 8(e), 16, and 18 of the Agreements, the Artists do not

present any argument or authority about these allegations or provisions.  Claims based on these

provisions and allegations are thus deemed abandoned on this motion to dismiss.  *See Johannes*

*Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 290

(E.D.N.Y. 2013) ("[A] Court need not entertain an argument that was not briefed."); *Feingold v. RageOn, Inc.*, 472 F. Supp. 3d 94, 97 (S.D.N.Y. 2020) (same).

A.    **The Artists Fail to State a Claim that the Paragraph 3(f) of the Exclusive Publishing Agreements Is Unenforceable**

In their opposition to Defendant's motion, the Artists raise only one argument for why the Agreements are unenforceable by their plain language.  Dkt. No. 17 at 17-19.  The Artists argue that the Agreements amount to "a complete restraint" on the Artists' profession because, though they retain the copyright to any artwork rejected by Art Brand under paragraph 3(f) of the Agreements, the Artists "are not allowed to publish and sell 'Rejected Images.'"  *Id.* at 18. Specifically, the Artists say that they are restrained "from contracting with other studios to sell artwork that Art Brand has rejected."  *Id.* at 19.  In this way, the Artists argue the Agreements amount to "a complete restraint on the Artists' profession," violate Section 16600 of the California Business and Professions Code, and are unenforceable.  *Id.*

Art Brand responds that paragraph 3(f) is not alleged as unenforceable in the complaint and that the Artists fail to explain how this provision amounts to a complete restraint on the Artists' ability to work in their chosen profession.  Dkt. No. 22 at 9.  Art Brand contends that the "Artists may create and sell other artwork outside the agreements, so long as they do not infringe Art Brand's intellectual property, or utilize Art Brand's contacts, in doing so."  *Id.*

Section 16600 of the California Business and Professions Code provides:  "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."[7]  Cal. Bus. & Prof. Code

---

[7] The parties do not dispute that California substantive law applies to this action.  Dkt. No. 13 at 13-18 (Defendant's brief relying on California law); Dkt. No. 17 at 17 (Plaintiffs' brief arguing that California law is applicable).  Paragraph 12 of the Agreements state that they are governed by California law.  Agreements ¶ 12.

§ 16600.  In *Ixchel Pharma LLC v. Biogen, Inc.*, 470 P.3d 571, 582 (Cal. 2020), the Supreme

Court of California held that "section 16600 is best read not to render void per se all contractual

restraints on business dealings, but rather to subject such restraints to a rule of reason."[8]

California courts "have long applied a reasonableness standard to contractual restraints on

business operations and commercial dealings."  *Id.* at 588.  In *Ixchel Pharma*, the California

Supreme Court also noted that it was "mindful of the consequences of strictly interpreting the

language of section 16600 to invalidate all contracts the limit the freedom to engage in

commercial dealing."  *Id.* at 589.  According to the court, "[i]n certain circumstances, contractual

limitations on the freedom to engage in commercial dealings can promote competition."  *Id.*  For

example, "[b]usinesses engaged in commerce routinely employ legitimate partnership and

exclusive dealing arrangements, which limit the parties' freedom to engage in commerce with

third parties."  *Id.*  "Such arrangements can help businesses leverage complementary capabilities,

ensure stability in supply or demand, and protect their research, development, and marketing

efforts from being exploited by contractual partners."  *Id.*

     The Artists have failed to plead facts to plausibly show that paragraph 3(f) of the

Agreements is an unreasonable restraint under Section 16600.  Paragraph 3(f) provides that the

Artists "shall be free to sell the original artwork rejected by the Company" and "shall retain the

copyrights to such Rejected Images."  Agreements ¶ 3(f).  The provision, however, restricts the

Artists from "grant[ing] any third party the right to print, vend, sell, reproduce, distribute and

---

[8] While some decisions have "strictly interpret[ed] section 16600 to invalidated noncompetition
agreements following the termination of employment or sale of interest in a business," *Ixchel
Pharma*, 470 P.3d at 588, neither party here has argued that the Agreements arise in such a
context.

otherwise use, or permit or license others to print, vend, sell, reproduce, distribute and otherwise use the Rejected Images." *Id.*

The complaint makes no reference to paragraph 3(f) of the Agreements and instead focuses on paragraphs 8(d), 8(e), 16, and 18 of the Agreements.  The complaint also does not allege facts regarding why the provision on Rejected Images amounts to an unreasonable restraint.  For example, while paragraph 3(f) prevents the Artists from granting third parties themselves the right to print, vend, sell, reproduce, distribute and otherwise use the Rejected Images, the Artists do not explain how this restriction impinges on their ability to otherwise use the Rejected Images or to work in their chosen profession under Section 16600.  It may well be that such a restriction or others are unreasonable under Section 16600, but the Artists have not pleaded facts to support such a conclusion.  They also do not allege facts to explain why the provision is unreasonable despite the ability of the Artists to sell the original artwork rejected by Art Brand to third parties.  Nor do they explain why the restriction imposes a complete limit on the Artists' ability to do business; as recognized by Art Brand, the restriction affects only images created during the Artists' contractual relationship with Art Brand.  It may well be that such a restriction—either alone or in combination with other provisions in the Agreements—is unreasonable under Section 16600, but the Artists have not pleaded facts to support such a conclusion.  Without such factual allegations, the Artists cannot state a claim that paragraph 3(f) violates the "rule of reason" and is unreasonable under Section 16600.  *Ixchel Pharma*, 470 P.3d at 590.

### B.    The Artists Fail to State a Claim Regarding Art Brand's Conduct Under the Exclusive Publishing Agreements

In their opposition to Defendant's motion to dismiss, the Artists also argue that Art Brand's enforcement of the Agreements amounts to a complete restraint on the Artists.  Dkt. No.

17 at 19-22.  The Artists first raise the issue of Art Brand's enforcement of paragraph 8(d) of the Agreements, which prohibits the Artists, during and following termination of the Agreements, "from creating Artwork in a style confusingly similar to the style of the Artwork created under this Agreement, except upon the written consent of the Company, which may be withheld in Company's sole discretion."  Dkt. No. 1 ¶ 14.  The Artists do not dispute that the provision is lawful as written.  Instead, the Artists argue that, as a matter of fact, Art Brand "has determined that no matter what work the Artists create, it is 'confusingly similar' and prohibited" under the Agreements, Dkt. No. 17 at 20 (citing Cota Decl. ¶¶ 33-34), and that this interpretation has "completely prevented the Artists from earning a living as Artists," *id.*  The Artists also assert in their briefing that Art Brand threatened the Artists with legal action for engaging in conduct permitted by the Agreements such as selling through a pre-existing client and attempting to sell originals of artwork.  *Id.* at 20-22.  These claims regarding conduct under the Agreements, however, do not require that the Agreements themselves be declared void or unenforceable.  The Artists argue that Art Brand acted in violation of the provisions of the Agreements, not that they are void or unenforceable.  In short, the Artists protest that Art Brand has sought to exercise rights that it does not have under the contracts.

First, these allegations, which feature prominently in the Artists' briefing, are not included in the Artists' complaint.  It is well-settled that a party cannot amend its complaint in an opposition brief.  *See Teamsters Allied Benefit Funds v. McGraw*, 2010 WL 882883, at *8 (S.D.N.Y. Mar. 11, 2010) ("It is well-settled that a claim for relief may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks omitted)); *Zeising v. Kelly*, 152 F. Supp. 2d 335, 344 (S.D.N.Y. 2001) ("Plaintiff cannot 'cure' his pleading deficiencies in the complaint by addressing them in his motion papers."); *O'Brien v. Nat'l Prop. Analysts*

*Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."); *see also Honickman v. BLOM Bank SAL*, 6 F.4th 487, 502 (2d Cir. 2021) ("[A] Rule 12(b)(6) motion tests the adequacy of the complaint . . . not the briefs." (alteration in original) (quoting *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 91 (2d Cir. 2000), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002))); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Thus, the Artists' allegations concerning Art Brand's enforcement of the Agreements are not cognizable on a motion to dismiss. *See Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) ("[A] district court errs when it considers affidavits and exhibits submitted by defendants or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." (cleaned up)).

Second, the Artists did not raise these allegations and claims among the 22 counterclaims they raised in the arbitration. Dkt. No. 14-2, Attach. A. Even assuming Art Brand had paid the full fees required by the arbitral Panel for the arbitration to proceed, the claims now raised by the Artists would not have been adjudicated. Art Brand is thus not in default in proceeding with an arbitration over these claims, and the Artists cannot circumvent the Agreements' arbitration clause to have those issues adjudicated by this Court. Put another way, to the extent these claims were not asserted in the now-terminated arbitration, there is nothing that would prevent the Artists from commencing a new arbitration for these claims arising out of and relating to the Agreements. The Artists remain subject to the arbitration clause to which they agreed.

For the foregoing reasons, Defendant's motion to dismiss for failure to state a claim is granted.

### III.     Leave to Amend

Art Brand argues that amendment would be futile because the provisions of the Agreements, on their face, are valid and enforceable under California law.  Dkt. No. 13 at 18-19. The Artists seek leave to amend should the Court find the complaint insufficient because they can amend their complaint to seek a declaration that they have a right to continue selling artwork through pre-existing clients and to sell the originals of their artwork under the Agreements.  Dkt. No. 17 at 22.  They also argue that they can amend to seek a declaration that both Agreements were terminated as of March 23, 2020 under the force majeure clauses.  *Id.* at 22-23.  The Artists also explain that "[a]s shown by the counter-complaint from the prior arbitration, the Artists have claims of breach of contract, breach of the covenant of good faith and fair dealing, an accounting, and others."  *Id.* at 23.

A court "should freely give leave" to replead "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  At the same time, leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

The Court will grant the Artists' leave to amend.  Contrary to Art Brand's argument, the Court cannot say that any challenge to the provisions of the Agreements under Section 16600 would be futile.   Thus, to the extent the Artists have claims from the terminated arbitration that were not raised in the complaint or can allege facts to support their claim that the Agreements are unenforceable under Section 16600, the Court grants the Artists leave to amend.

**CONCLUSION**

Defendant's motion is GRANTED IN PART and DENIED IN PART.  Defendant's

motion to dismiss and compel arbitration is DENIED.  Defendant's motion to dismiss for failure

to state a claim is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. No. 12.


SO ORDERED.


Dated: October 15, 2021
        New York, New York                    _____
                                                    LEWIS J. LIMAN
                                              United States District Judge